**O**

# United States District Court
# Central District of California

GERARDO CABANILLAS,

        Plaintiff,

    v.

CITY OF SOUTH GATE et al.,

        Defendants.

Case № 2:24-cv-08027-ODW (BFMx)

**ORDER DENYING DEFENDANT CITY OF SOUTH GATE'S MOTION TO DISMISS COUNT VI [155]**

## I.    INTRODUCTION

Plaintiff Gerardo Cabanillas brings this civil rights action against Defendants City of South Gate ("South Gate"), City of Huntington Park ("Huntington Park"), and individual officers Lee Jack Alirez, David Pixler, Jonathan Sekiya, Detective Lopez, Officer Ayestas, Officer Salcido, John Navarrette, Cosme Lozano, and Anthony Porter, following Cabanillas's wrongful arrest and conviction in 1995 for crimes he did not commit.  (Second Am. Compl. ("SAC"), Dkt. No. 142.)  South Gate now moves to dismiss Count VI of Cabanillas's Second Amended Complaint for *Monell* liability.  (Mot. Dismiss ("Motion" or "Mot."), Dkt. No. 155.)  For the reasons discussed below, the Court **DENIES** South Gate's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

The Court incorporates by reference the detailed background in its prior Order Granting South Gate's Motion to Dismiss Count VI.  (Order Granting Mot. Dismiss ("MTD Order") 2–4, Dkt. No. 141.)   The Court summarizes here only the facts relevant to the disposition of this Motion.

Cabanillas spent nearly thirty years incarcerated for crimes he did not commit. (SAC ¶ 192.)   During the investigation that led to his conviction, law enforcement officers fabricated evidence, coerced confessions, and withheld exculpatory material. (*Id.* ¶¶ 147–76.)   Another suspect later confessed to the crimes and Cabanillas was ultimately exonerated.  (*Id.* ¶¶ 189–91.)

On March 16, 1995, after Cabanillas's arrest but before his trial, a Deputy Public Defender issued a memorandum to South Gate's Deputy in Charge (the "DPD Memo").  (*Id.* ¶¶ 260–66.)   The DPD Memo indicated that Officer Alirez, the officer leading Cabanillas's criminal investigation, "routinely" fabricated evidence, coerced confessions, and obtained confessions in exchange for promises of leniency.  (*Id.* ¶¶ 262, 266.)   South Gate's Police Chief was aware of these practices due to the small size of the agency.  (*Id.* ¶ 272.)   Despite knowing this information, officers nevertheless pursued Cabanillas's criminal prosecution and "South Gate did nothing to cure the problem."  (*Id.* ¶¶ 268, 273.)

After he was exonerated, Cabanillas initiated this action asserting civil rights violations under 42 U.S.C. § 1983.  (Compl., Dkt. No. 1.)   On August 8, 2025, the Court granted South Gate's motion and dismissed Cabanillas's *Monell* claim with leave to amend.  (MTD Order 16.)   On August 22, 2025, Cabanillas filed his Second Amended Complaint.  (SAC.)   South Gate now moves to dismiss the amended *Monell* claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Mot.)

---

[2] All factual references derive from Cabanillas's Second Amended Complaint, and well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Id.* However, a court need not blindly accept conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### IV.    DISCUSSION

Cabanillas alleges that South Gate is liable under § 1983 for violations of his constitutional rights during the investigation and prosecution that led to his wrongful conviction. (SAC ¶¶ 239–76.) South Gate argues that Cabanillas fails to plausibly allege a *Monell* claim for municipal liability. (Mot.)

A municipality may be liable under § 1983 when it maintains a policy or custom that violates the constitutional rights of another. *Park v. City & County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). To impose liability on a municipal entity under

§ 1983, a plaintiff must show (1) a constitutional deprivation; (2) a municipal policy; (3) "that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional rights; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91, (1989)). A municipality "cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691.

There is no heightened pleading standard for *Monell* claims. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993). However, a complaint must contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Thus, to survive "a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of unlawful policies, conducts or habits." *Doe #1 M.L. v. San Bernardino Sheriff Dep't*, 753 F. Supp. 3d 1024, 1029–30 (C.D. Cal. 2024).

Cabanillas advances several theories of municipal liability against South Gate based on (1) an official written policy or lack thereof, (2) a longstanding custom or practice, (3) failure to train, and (4) ratification. (SAC ¶¶ 239–76.) These theories are "separate *arguments* in support of a single claim." *Quinto-Collins v. City of Antioch*, No. 21-cv-06094-VC, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 535 (1992)). "In the context of *Monell*, the different theories of liability . . . are best understood the same way—as different arguments in support of a single claim." *Id.* As discussed below, the Court finds that Cabanillas plausibly pleads a *Monell* claim based on a policy of inaction or omission. Thus, the Court need not assess the merits of Cabanillas's other potential *Monell* theories. *See Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 957 (C.D. Cal. 2001) ("Where a plaintiff within a single claim for relief sets forth several legal theories . . . it is not for the district court to assess the [merits] of each theory at the pleading stage where [the] plaintiff has made sufficient allegations to support one of the theories.").

4

Cabanillas alleges that South Gate is liable under § 1983 for failing to implement policies and safeguards to prevent constitutional violations. This includes policies prohibiting the use of unreliable identification evidence in criminal prosecutions and policies governing the training and supervision of law enforcement officers. (SAC ¶¶ 239–76.) He alleges that South Gate knew officers had fabricated evidence that was used to convict him and that they failed to act to stop it. (*Id.* ¶ 273.) He further alleges that South Gate's inaction and omission caused his wrongful conviction. (*Id.* ¶¶ 249, 252.)

"A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). "In inaction cases, the plaintiff must show, first, that the policy amounts to deliberate indifference to the plaintiff's constitutional right." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (citation modified). This requires the plaintiff to show that the defendant "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* (quoting *Tsao*, 698 F.3d at 1145). "Second, the plaintiff must show 'that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy.'" *Id.* (quoting *Tsao*, 698 F.3d at 1143).

Cabanillas's allegations against South Gate adequately state a policy of inaction. First, Cabanillas plausibly alleges that South Gate's policy amounts to deliberate indifference to Cabanillas's constitutional rights. Cabanillas alleges that South Gate lacked adequate written policies governing eyewitness-identification procedures and the supervision of officers conducting criminal investigations. (SAC ¶¶ 241, 249.) These allegations support the inference that this omission did not occur in a vacuum. The DPD Memo put South Gate on actual or constructive notice that Alirez had engaged in serious investigative misconduct, including fabricating evidence, securing confessions through promises of leniency, and using improper identification practices in felony investigations. (*Id.* ¶ 262.) For example, the DPD

Memo indicated that Alirez fabricated identification evidence used against Cabanillas and that Cabanillas confessed to the crimes only following a false promise of leniency. (*Id.* ¶¶ 263, 265.) The DPD Memo was circulated among those in charge of the police department, so the police chief either knew or is fairly charged with knowing of the conduct described. (*Id.* ¶¶ 266, 271–72.) Thus, the Court may reasonably infer at the pleading stage that South Gate was aware of a substantial risk that, absent adequate policies or supervision, a constitutional injury would result. Nor do these facts describe an isolated investigative error. Read together, the facts concerning the DPD Memo, Alirez's known history of misconduct, South Gate's lack of written identification procedures, and its repeated use of improper investigative methods collectively support the inference that South Gate failed to act despite notice of a pattern of unconstitutional conduct. Thus, these facts suffice to support the deliberate indifference component of a policy of inaction theory. *See Park*, 952 F.3d at 1141 ("Deliberate indifference exists when the need 'for more or different' action 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" (quoting *Canton*, 489 U.S. at 390 & n.10)).

Second, the facts plausibly support causation. Without governing procedures for eyewitness identifications, officers were able to use improper suggestive methods that could predictably distort eyewitness evidence. For instance, Cabanillas' describes how officers manipulated photo lineups by reusing the same filler photographs after the victims had already viewed them and permitted witnesses to sit together during the identification process. (SAC ¶¶ 83–95, 124–42.) Moreover, Alirez forced victims to positively identify Cabanillas as the perpetrator, even after the victims expressed serious hesitation and refused to sign the photo array. (*Id.* ¶¶ 124–42.) These facts support the inference that, without adequate safeguards, officers like Alirez were able to manipulate the identification process to fabricate evidence. Thus, Cabanillas plausibly alleges that South Gate's policy of inaction caused his constitutional injury.

The challenged conduct here is not merely adjacent to Cabanillas's conviction; it concerns the very identification practices that produced evidence used to wrongfully convict him. (*Id.* ¶ 265.) On this record, the Court reasonably infers that South Gate's failure to adopt adequate policies concerning eyewitness identification and officer supervision amounts to deliberate indifference to Cabanillas's constitutional rights and that this omission was the moving force behind the constitutional injury. *See Canton*, 489 U.S. at 388–90 (holding that municipal liability under § 1983 attaches where a municipality is deliberately indifferent "to the rights of its inhabitants" and this failure is the moving force behind the constitutional violation).

Accepting Cabanillas's allegations as true and construing all reasonable inferences in his favor, Cabanillas pleads sufficient facts to state a *Monell* claim based on South Gate's policy of inaction. Accordingly, South Gate's Motion fails.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** South Gate's Motion to Dismiss. (Dkt. No. 155.)

**IT IS SO ORDERED.**

March 12, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

7