**Tomas A. Guterres, Esq. (State Bar No. 152729)**
**James C. Jardin, Esq. (State Bar No. 187482)**
**COLLINS + COLLINS LLP**
**790 E. Colorado Boulevard, Suite 600**
**Pasadena, CA 91101**
**(626) 243-1100 – FAX (626) 243-1111**
**Email: tguterres@ccllp.law**
**Email: jjardin@ccllp.law**

Attorneys for Third-Party
LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| GERARDO CABANILLAS,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SOUTH GATE, et al.,<br><br>Defendants. | CASE NO. 2:24-cv-8027-ODW (BFMx)<br>***[Assigned to Hon. Otis D. Wright, II in Courtroom 5D]***<br><br>**THIRD-PARTY LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE'S OPPOSITION TO JOINT MOTION TO COMPEL PRODUCTION**<br><br>**DATE: November 10, 2026**<br>**TIME: 10:00 a.m.**<br>**BEFORE: Hon. Brianna F. Mircheff** |

*28355*



COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

## I. Introduction.

The Los Angeles County District Attorney's Office (the "LADA") is not a party to this lawsuit. It has nonetheless acted in good faith, producing its complete prosecutorial file of more than 4,000 pages in response to the parties' subpoenas. Dkt. 189, p. 5, 1st full paragraph. The movants now demand the one set of records the LADA cannot lawfully produce: the investigative and deliberative file of its Conviction Integrity Unit ("CIU"). Disclosure of that file would expose the workings of an active, open homicide investigation that the LADA is conducting jointly with the Los Angeles Police Department ("LAPD") and the Federal Bureau of Investigation ("FBI"). Dkt. 189-5, pp. 2-3, ¶¶ 4-8.

The motion is built on a strawman. The movants devote their argument to the proposition that a California sealing order cannot "bind" a federal court. Dkt. 189, p. 6. But the LADA does not contend that the state order strips this Court of power. The LADA's objection rests on Federal Rule of Evidence 501, the same rule the movants invoke. Two federal common-law privileges shield the withheld materials: the qualified law-enforcement privilege, which protects the files of an ongoing criminal investigation, and the deliberative-process privilege, which protects the LADA's pre-decisional conviction-review analysis. Rule 45's heightened protection for non-parties independently bars the sweeping demand the movants have served.

The movants' lead authority confirms the point rather than defeating it. In the case on which they principally rely, the records were a sealed arrest file and there was no ongoing investigation, such that a protective order resolved the only concern in play. Here, by contrast, a responsible LADA official has attested under oath that disclosure would compromise an active investigation into violent crimes, including an unsolved murder, whose perpetrator remains at large. Dkt. 189-5, pp. 2-3, ¶¶ 4-8. That fact changes everything, and the motion should be denied.

///

///



COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

## II. Relevant Background.

***The underlying crimes were not homicides.***

Gerardo Cabanillas alleges that officers of the South Gate and Huntington Park Police Departments framed him for crimes committed on January 16 and 18, 1995: a robbery, carjacking, kidnapping, and rape, and a separate robbery and attempted carjacking. Dkt 189, p. 3, 1st paragraph. None was a homicide. Cabanillas served roughly 28 years before his conviction was vacated after DNA testing excluded him. *Id.*, 2nd paragraph.

***The exoneration opened a homicide investigation.***

The DNA recovered from the sexual-assault kit excluded Cabanillas, and it also matched blood samples collected in an unsolved murder case. Dkt. 189-5, p. 2 ¶ 5. Craig Hum, the Head Deputy of the LADA's Major Crimes Division, attests that the LADA, along with the LAPD and the FBI, is currently investigating the alternate suspects in the 1995 crimes, one of whom is also responsible for the unsolved murder, in order to identify, apprehend, and prosecute them. *Id.*, ¶ 6. That investigation uses forensic-genealogy "tree-building," a "lengthy, laborious process which is presently ongoing." *Id.* at pp. 2-3, ¶ 7. Mr. Hum attests that disclosing the post-conviction DNA testing and the investigation into alternate suspects "would compromise the integrity of an ongoing investigation" into both the underlying crime and the unsolved murder. *Id.*, p. 3, ¶ 8.

***The CIU review was confidential and pre-decisional.***

Martha Carrillo, then the Deputy-in-Charge of the CIU, attests that the CIU's post-conviction review process is confidential and pre-decisional at every step. Dkt. 189-6, pp. 3-4, ¶¶ 9-12. The "*People v. Cabanillas Memo*" is labeled "CONFIDENTIAL MEMORANDUM" and reflects the "pre-decisional, deliberative process leading to the decision to concede Mr. Cabanillas' factual innocence." *Id.*; Dkt. 189-6, p. 4, ¶¶ 13-17. The process demands confidentiality so that the LADA can candidly weigh sensitive matters, including "prosecutorial error," "outside agency error,



COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

and the impact of policies, procedures or customs." *Id.* at p. 3, ¶ 11.

***The state court sealed the file to protect the investigation.***

On September 21, 2023, the Los Angeles Superior Court, the Honorable William C. Ryan, granted the joint habeas petition and a joint motion to seal the *People v. Cabanillas* case file under California Penal Code section 851.86 and California Rule of Court 2.551. Dkt. 189-6, pp. 4-5, ¶¶ 18-21. Although the CIU routinely releases post-conviction materials after an exoneration, it joined the motion to seal here precisely because the exoneration produced a related open cold-case homicide investigation. *Id.*, p. 5, ¶ 21.

***What remains in dispute.***

The LADA has produced its 4,000-plus-page prosecution file. Dkt. 189, p. 5, 1st full paragraph. The movants seek two further categories: the CIU's investigative materials and the LADA's communications with Cabanillas's attorneys. *Id.* Each subpoena demands, in identical terms, "[t]he complete Los Angeles District Attorney's Office file pertaining to Gerardo Cabanillas … including all records, files, expert reports, testing results, notes, correspondence, memoranda or emails of any kind." Dkt. 189-1, p. 4.

## III. Legal Standard.

In a federal-question case, federal law governs the existence and scope of an asserted privilege. To the extent a state provision creates a privilege against disclosure, it is not entitled to recognition as such in federal court, but where a state confidentiality doctrine does not conflict with federal interests it "may be taken into account as a matter of comity." *Ceramic Corp. of America v. Inka Maritime. Corp. Inc.*, 163 F.R.D. 584, 588 (C.D. Cal. 1995). The two privileges the LADA asserts are creatures of federal common law. Federal courts recognize a qualified official-information or law-enforcement privilege, resolved through a case-by-case balancing of the requesting party's need against the government's interest. *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). They likewise recognize a qualified deliberative-process

*28355*

COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

privilege protecting advisory opinions, recommendations, and deliberations that form part of the process by which government decisions are reached. *F.T.C. v. Warner Communications, Inc.*, 742 F.2d 1156, 1160–1161 (9th Cir. 1984).

Rule 45 independently constrains the subpoenas. The Court must quash or modify a subpoena that requires disclosure of privileged matter or subjects a person to undue burden. Fed. R. Civ. Proc. 45(d). The proportionality limits of Rule 26(b) apply with full force to a Rule 45 subpoena served on a non-party. *St. Jude Medical S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 637 (D. Or. 2015).

## IV. Argument

### A. Compelled disclosure of the CIU file would cripple an active homicide investigation and is barred by the law-enforcement privilege.

The LADA's strongest objection is the simplest: the records sought are the working file of a live criminal investigation, and federal law protects them.

#### 1. The law-enforcement privilege protects the files of an ongoing investigation.

Federal common law recognizes a qualified official-information privilege, under which courts balance the litigant's interest against the government's. *Soto, supra*, 162 F.R.D. at 613. That privilege is the federal rule in this Circuit. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-1034 (9th Cir. 1990). Federal courts have specifically recognized "a qualified privilege protecting investigative files in an ongoing criminal investigation." *In re U.S. Department of Homeland Security*, 459 F.3d 565, 569–570 (5th Cir. 2006).

#### 2. The governing balance tips decisively toward protection here.

In civil-rights cases the balancing is ordinarily "moderately pre-weighted in favor of disclosure." *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987). But that tilt is not unconditional. Where there is "a very real threat to obviously important law enforcement interests," such as "confidential informants in on-going criminal investigations" and "operational plans for imminent police activities," the pre-



COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600, Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

weighting "will not disable courts from protecting those law enforcement interests." *Id.* at 661. The government's interest is "much greater" in records of an ongoing investigation than in information about events "long since past and about which there will be no prosecution." *Id.* at 662. The Hum declaration establishes exactly the circumstance the court reserved from the usual tilt: an open homicide investigation, active forensic-genealogy work, and coordination with the LAPD and FBI to apprehend a perpetrator who remains at large. Dkt. 189-5, pp. 2-3 ¶ 5-8.

The multi-factor test used in this balancing points the same way. Two factors ask whether the investigation has been completed and whether the information might feed a criminal proceeding that is pending or reasonably likely to follow. *Kelly, supra*, 114 F.R.D. at 663. Both cut against disclosure here, where the investigation is ongoing and aimed squarely at a future prosecution. Dkt. 189-5, pp. 2-3 ¶ 5-8.

**3. The privilege is properly and formally invoked.**

To invoke the privilege, an agency must make a substantial threshold showing through a declaration from a responsible official with personal knowledge, affirming that the agency maintained the material in confidence, that the official has personally reviewed it, and identifying the governmental interests threatened, the risk of harm from disclosure, and the magnitude of that harm. *Kelly, supra*, 114 F.R.D. at 669–670; *Soto, supra*, 162 F.R.D. at 613. Mr. Hum is the Head Deputy of the Major Crimes Division with supervisory responsibility over, and personal knowledge of, the open homicide investigation. Dkt. 189-5, p.2 ¶¶ 2-3. His sworn declaration identifies the interest at stake (the integrity of an active investigation into violent crime) and the harm disclosure would cause. *Id.*, p. 3, ¶ 8. Courts have found materially identical declarations sufficient where a responsible official attested that the records contained information about ongoing investigations, including investigative leads and methods. *In re U.S. Department of Homeland Security, supra*, 459 F.3d at 568.

**4. A protective order cannot cure the harm.**

The movants answer that the stipulated protective order resolves any concern.



COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

Dkt. 189, p. 7, last paragraph. It does not. That order runs among the civil litigants, including the very police-officer defendants and their counsel, and governs the use of discovery in this case. It does nothing to protect the secrecy of an ongoing criminal investigation from the people most interested in its course. The threshold showing the privilege requires is precisely a showing that disclosure "subject to a carefully crafted protective order" would still create a substantial risk of harm. *Kelly, supra*, 114 F.R.D. at 669–670. Mr. Hum's declaration makes that showing: the harm is not reputational or private but operational and consists of the compromise of leads and techniques in a live hunt for a violent offender. Dkt. 189-5, p. 3, ¶ 8. The privacy-driven cases the movants cite do not reach this distinct and weightier interest.

**5. The privilege is time-bounded, not permanent.**

Because the law-enforcement privilege "lapses either at the close of an investigation or at a reasonable time thereafter," denying the motion does not permanently foreclose the movants. *In re U.S. Department of Homeland Security, supra*, 459 F.3d at 571. It protects the investigation while it remains active, which is all the LADA seeks and what the law allows.

**B. The CIU's recommendation materials are protected by the deliberative-process privilege, and the movants cannot extract "facts" that are inseparable from the LADA's deliberations.**

**1. The privilege squarely applies.**

The deliberative-process privilege permits the government to withhold "advisory opinions, recommendations and deliberations comprising part of [the] process by which government decisions and policies are formulated," to promote candid internal discussion and protect the quality of agency decisions. *F.T.C. v. Warner Communications Inc., supra*, 742 F.2d at 1160–1161. A document qualifies if it is predecisional and deliberative. *Id.* at 1161. The Carrillo declaration establishes both: the Cabanillas Memo was prepared before the LADA's decision and reflects the analysis, opinions, and recommendations leading to it. Dkt. 189-6, p. 4, ¶¶ 13-17.



COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

**2. The privilege applies in civil-rights cases.**

No controlling Supreme Court or Ninth Circuit authority holds the deliberative-process privilege unavailable in Section 1983 litigation, and courts in this Circuit apply it in such cases. *Llera v. Las Vegas Metropolitan Police Dept.*, 564 F. Supp. 3d 914, 917–919 (D. Nev. 2021). To the extent the movants suggest otherwise, the argument fails.

**3. The movants cannot carve "facts" out of the deliberative file.**

The movants say they seek only "factual information" such as interview notes and disclaim any deliberative material. Dkt. 189, p. 6, fn. 3. That concession does not solve their problem. Purely factual material is unprotected only when it can be separated from the deliberations: where factual material is "so interwoven with the deliberative material that it is not severable," the whole is protected. *F.T.C. v. Warner Communications Inc., supra*, 742 F.2d at 1161. A federal court applying the privilege to a prosecutor's internal memorandum drew exactly this line: the objective factual summary was not privileged, but the prosecutor's characterization of the evidence, identification of its "problems," assessment of its weight, and conclusions were protected because they were inextricably linked to the pre-decisional decision. *Bahena v. City of Chicago*, No. 17 C 8532, 2018 WL 2905747, *3 (N.D. Ill. June 11, 2018). The *Cabanillas* Memo is of that character: a confidential analysis culminating in a recommendation on factual innocence, in which the facts and the LADA's assessment of them are intertwined. Where that is so, the file is protected in full. *United States v. Rozet*, 183 F.R.D. 662, 667 (N.D. Cal. 1998).

**4. The privilege is formally and properly claimed.**

The deliberative-process privilege must be raised by a formal claim lodged by a responsible official after personal consideration and may not be supported by counsel's declaration. *United States v. Rozet, supra*, 183 F.R.D. at 665. The Carrillo declaration, from the official who supervised the CIU's review of the Cabanillas matter and participated in the decision, supplies that formal claim and describes the process and

28355

COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

materials withheld. Dkt. 189-6, pp. 2-4, ¶¶ 2-17.

**C. Comity requires this Court to respect the state court's sealing order and the substantial interests behind Penal Code section 851.86.**

The movants' framing of this issue is a strawman, and their own cases supply the answer. The LADA agrees that state law does not control the existence of a privilege in a federal-question case. But that is not the end of the analysis. Where a state confidentiality doctrine does not conflict with federal interests, it "may be taken into account as a matter of comity." *Ceramic Corp. of America. v. Inka Maritime Corp. Inc.*, *supra*, 163 F.R.D. at 588. The *People v. Cabanillas* seal was entered by the Superior Court after deliberation, for a recognized purpose, and at the LADA's request specifically to protect the ongoing homicide investigation. Dkt. 189-6, pp. 4-5, ¶¶ 18-21. That is a substantial state interest, fully aligned with the federal law-enforcement interest, and it weighs heavily in the balance.

Comity also supplies the appropriate course. Federal courts are "dissuaded from directing an order to a state court when the state court has a mechanism for…supplying a remedy," and ordinarily require a party seeking sealed state records to first petition the state court that entered the seal. *Lumpkin v. Clark,* 2008 WL 2441986, *7 (D. Colo. June 16, 2008). The movants have not done so. They ask this Court to override a state sealing order without ever asking Judge Ryan to lift it.

The movants' lead case does not help them. See *Brooks v. City of Palm Springs*, No. 5:21-cv-00754-JGB-SP, 2024 WL 3077165 (C.D. Cal. Mar. 14, 2024.) There, the sealed records concerned a defendant acquitted after an open, public trial, there was no ongoing criminal investigation, and a protective order fully addressed the only interest at stake, which was personal privacy. *Id.* at *3-4. The dispositive fact here (an active homicide investigation) was absent there.

The movants' further argument, that section 851.86 exists for the exoneree's benefit and Cabanillas himself seeks the records (Dkt. 189, p. 7, 1st full paragraph), ignores that the records are sought jointly with the defendant officers and would flow to



COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

them. The statute's purpose of helping an exoneree move on does not require handing an active investigative file to the civil litigants. Indeed, the CIU departed from its routine practice of releasing post-conviction materials, and joined the seal, for that very reason. Dkt. 189-6, p. 5, ¶ 20.

**D. The subpoenas are overbroad and unduly burdensome as to a non-party.**

Even apart from privilege, the subpoenas sweep too broadly to be enforced against a non-party. The Ninth Circuit affords heightened solicitude to non-parties, and the restriction on discovery "may be broader when a nonparty is the target" to protect third parties from harassment, inconvenience, and the disclosure of confidential materials. *St. Jude Medical S.C., Inc. v. Janssen-Counotte, supra*, 305 F.R.D. at 637. Furthermore, the proportionality limits of Rule 26(b) apply to a Rule 45 subpoena. *Id.*

A demand for a party's "complete…file…including all records…of any kind" is the paradigm of an overbroad request. Dkt. 189-3, p. 4. Such sweeping demands may be enforced only to the extent necessary to resolve the dispute, with courts routinely narrowing "any and all records" subpoenas to the relevant subset and excluding the rest. *Ceramic Corp. of America v. Inka Maritime Corp. Inc., supra*, 163 F.R.D. at 586–589.

The materials at the heart of this dispute illustrate the overbreadth. The civil claim is that officers fabricated evidence to frame Cabanillas for non-homicide crimes in 1995. Dkt. 189, p. 3, 1st paragraph. The LADA's active investigation into alternate suspects and an unrelated unsolved murder is, at best, attenuated from that claim, and the harm of exposing it to the civil parties outweighs any marginal relevance. The movants themselves disclaim any interest in the homicide investigative file. *Id.* at p. 8, 2nd paragraph. They cannot obtain it indirectly through a demand for the "complete file."

///

///

///

///

*28355*

COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

**V. Conclusion.**

The CIU file is the working record of an open homicide investigation and the LADA's confidential, pre-decisional conviction-review analysis. Federal privilege law protects it, comity counsels respect for the state court's sealing order, and Rule 45 forbids so sweeping a demand against a non-party. For the foregoing reasons, the Los Angeles County District Attorney's Office respectfully requests that the Court deny the Joint Motion to Compel in its entirety.

DATED: October 20, 2026

COLLINS + COLLINS LLP

By: ______________________________

JAMES C. JARDIN
TOMAS A. GUTERRES
Attorneys for Third-Party
LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE

28355

COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

**PROOF OF SERVICE**
**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of Los Angeles. )

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action. My business address is 790 E. Colorado Boulevard, Suite 600, Pasadena, CA 91101.

On this date, I served the foregoing document described as **THIRD-PARTY LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE'S OPPOSITION TO JOINT MOTION TO COMPEL PRODUCTION** on the interested parties in this action by placing same in a sealed envelope, addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Pasadena, California.

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on designated recipients listed on the attached service list.

☐ **(ELECTRONIC SERVICE PER CODE CIV. PROC., § 1010.6)** – By prior consent or request or as required by rules of court (Code Civ. Proc., § 1010.6 (amended Jan. 1, 2021); Code Civ. Proc., § 1013(g); Cal. Rules of Court, rule 2.251(a)).

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on October 20, 2026 at Pasadena, California.

☐ **(STATE)** - I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

JAMES C. JARDIN
jjardin@ccllp.law

28355

COLLINS + COLLINS LLP
790 E. Colorado Blvd., Suite 600,
Pasadena, CA 91101
T: (626) 243-1100
F: (626) 243-1111

**GERARDO CABANILLAS V. CITY OF SOUTH GATE - SDT**
**Case Number: 2:24-cv-8027-ODW (BFMx)**
**CCLLP File Number: 28355**

**SERVICE LIST**

Isaac A. Lovo
Kimberly Sarmiento (Kim is on leave)
CARPENTER ROTHANS AND DUMONT LLP
500 South Grand Avenue, 19th Floor
Los Angeles, CA 90071
T: (213) 228-0400 - F: (213) 228-0401
ilovo@crdlaw.com
ksarmiento@crdlaw.com
malvarez@crdlaw.com
tlopez@crdlaw.com
**ATTORNEYS FOR DEFENDANTS, CITY OF SOUTH GATE, LEE JACK ALIREZ, DAVID PIXLER, AND JONATHAN SEKIYA**

Avi T. Kamionski
Brian Wilson
John M. Cerney
Murray Kamionski
Rebecca Sarah Sandberg-Vossmeyer
Shneur Zalman Nathan
NATHAN AND KAMIONSKI LLP
6262 Glade Avenue
Woodland Hills, CA 91367
T: (213) 228-0400 - F: (213) 228-0401
akamionski@nklawllp.com
bwilson@nklawllp.com
jcerney@nklawllp.com
mkamionski@yahoo.com
rvossmeyer@nklawllp.com
snathan@nklawllp.com
**ATTORNEYS FOR DEFENDANT, CITY OF SOUTH GATE**

Annalise Wagner
Alison R. Leff
David B. Owens
Jonathan I. Loevy
Rosalind E. Dillon
Steven E. Art
LOEVY AND LOEVY
311 North Aberdeen Street, 3rd Floor
Chicago, IL 60607
T: (312) 243-5900 - F: (312) 243-5902
wagner@loevy.com
mseplow@sshhzlaw.com
alison@loevy.com
david@loevy.com
jon@loevy.com
dillon@loevy.com
steve@loevy.com
**ATTORNEYS FOR PLAINTIFF, GERARDO CABANILLAS**

Caroline Anne Byrne
Brian Andrew Moore
Meredith Dawn Stewart
WOODRUFF AND SMART APC
555 Anton Blvd., Suite 1200
Costa Mesa, CA 92626
T: (714) 558-7000 - F: (714) 835-7787
cbyrne@woodruff.law
bmoore@woodruff.law
mstewart@woodruff.law
**ATTORNEYS FOR DEFENDANTS, CITY OF HUNTINGTON PARK, JOHN NAVARRETTE, COSME LOZANO, AND ANTHONY PORTER**